AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A black Apple iPhone cellular phone with an unknown<br>associated telephone number, having no visible<br>markings under case number R2-23-0063, Exhibit N-3 | )<br>)<br>)<br>)<br>)<br>) |

Case No.   '23  MJ0283

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-1.

located in the ___Southern District___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., Sec. 841(a)(1) | Possession of Cocaine with Intent to Distribute |

The application is based on these facts:
See affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

George Vernia, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   ___1/23/2023___

_____
*Judge's signature*

City and state:  ___San Diego, CA___

Andrew. G Schopler, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violation of Title 21, United States Code, Section 841(a)(1) is **a A black Apple iPhone cellular phone with an unknown associated telephone number, having no visible markings under Case number R2-23-0063, Exhibit N-3 ("Target Device 1").**



**Target Device 1** is currently in the possession of the Drug Enforcement Administration (DEA) as evidence and being held in the DEA San Diego Field Division.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below. The seizure and search of the **Target Devices** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, contact lists, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **December 20, 2022 to January 20, 2023**:

a.    tending to identify attempts to possess methamphetamine or other federally controlled substances with the intent to distribute them within the United States;

b.    tending to identify other accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the possession of methamphetamine or other federally controlled substances with the intent to distribute them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in the possession of methamphetamine or other federally controlled substances with the intent to distribute them within the United States;

d.    tending to identify travel to or presence at locations involved in the possession of methamphetamine or other federally controlled substances with the intent to distribute them within the United States, including stash houses, load houses, and/or delivery points;

     e.       tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

     f.       tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 21, United States Code, Section 841(a)(1).**

1

2 **UNITED STATES DISTRICT COURT**

3 **SOUTHERN DISTRICT OF CALIFORNIA**

4

5 IN THE MATTER OF THE SEARCH OF

6

7 **(1) A black Apple iPhone cellular phone**

8 **with an unknown associated telephone**

9 **number, having no visible markings under**

10 **Case number R2-23-0063, Exhibit N-3**

11 **("Target Device 1"); and**

12 **(2) a black, Samsung Galaxy S8+ cellular**

13 **telephone with an unknown associated**

14 **telephone number, having an IMEI**

15 **number of 355980081726931 ("Target**

16 **Device 2")**

17

**AFFIDAVIT OF SPECIAL AGENT GEORGE VERNIA IN SUPPORT OF SEARCH WARRANT**

18

19 I, Special Agent George Vernia, being duly sworn, hereby state as follows:

20 **I**

21 **INTRODUCTION**

22 1.     This affidavit supports an application for a warrant to search the following

23 items described in Attachments A-1 and A-2 (incorporated herein);

24             a.     **A black Apple iPhone cellular phone with an unknown**

25 **associated telephone number, having no visible markings under**

26 **Case number R2-23-0063, Exhibit N-3 ("Target Device 1"); and**

27

28

      **b.**     **A black, Samsung Galaxy S8+ cellular telephone with an unknown associated telephone number, having an IMEI number of 355980081726931 ("Target Device 2").**

and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section 841 – Possession of Controlled Substances with Intent to Distribute. This search supports an investigation of Gabriel ROMERO (ROMERO or Defendant) for the crime mentioned above. A factual explanation supporting probable cause follows.

2.    The **Target Devices** were seized on January 20, 2023 from ROMERO following his arrest at the San Diego International Airport (SDIA) when he was caught, via Transportation Security Administration (TSA) screening, attempting to smuggle approximately 12 kilograms of suspected cocaine in his checked suitcase. The **Target Devices** are currently stored as evidence at the Drug Enforcement Administration (DEA) San Diego Field Division (SDFD) located at 4560 Viewridge Avenue, San Diego, California 92123.

3.    Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B incorporated herein.

4.    The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from my direction participation and observations in this investigation, having reviewed reports prepared by other law enforcement agents and officers and other evidence related to this case. Because this affidavit is made for the limited purpose of obtaining search warrants for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish requisite probable cause.

## II

## AFFIANT'S EXPERIENCE AND TRAINING

5.     I am a Special Agent (SA) employed by the United States (U.S.) Department of Justice, Drug Enforcement Administration (DEA), and have been so employed for approximately 23 years.  I am currently assigned to the DEA San Diego Field Division (SDFD) and have been so for approximately 19 years.  Prior to my current assignment, I was assigned to the New Orleans Division for approximately three years.  During my employment with DEA, I have investigated illicit controlled substance trafficking in and around the surrounding areas of Louisiana, Mississippi, Arkansas, San Diego, Afghanistan and Iraq. I have had formal training and experience in controlled substance investigations and I am familiar with the manner in which controlled substances, are packaged, marketed, and consumed.

6.     I attended a 16-week DEA Basic Agents Academy where I received training in the identification of different types of controlled substances by sight and odor, including cocaine. I have made numerous arrests for violations involving such substance. In the course of my employment, I have become familiar with the ordinary meaning of controlled substance slang and jargon, and I am familiar with the manners and techniques of manufacturers and traffickers of controlled substances as practiced locally. I have been the case agent / co-case agent on numerous controlled substance trafficking cases. These cases have involved multi ounce to multi kilogram-controlled substance traffickers, in which I have conducted surveillances, executed search warrants, arrest warrants and have interviewed suspects who have been arrested for trafficking controlled substances. I have debriefed numerous defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations. I also conducted formal and informal interviews to elicit sensitive information from witnesses, suspects and others, including those who were hostile, confrontational, reluctant, and in distress.

7.     I have assisted on Federal Wire Taps investigating drug trafficking organizations involved in the trafficking of illegal narcotics. During these complex wiretap investigations, I have investigated how these drug trafficking organizations

3

transport, package, sell and collect the proceeds from their illegal drug trafficking operations.

8.    I am currently assigned to DEA SDFD San Diego County Integrated Narcotics Task Force (NTF) Team 8, at the San Diego International Airport (SDIA), and have been so assigned since December 19, 2021. NTF Team 8 is comprised of DEA SAs, Task Force Agents (TFAs) from the U.S. Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and Task Force Officers (TFOs) who are Detectives (federally cross sworn) from the San Diego Police Department (SDPD), San Diego County Sheriff's Department (SDSD) and Harbor Police Department (HPD), who primarily investigate illegal drug trafficking organizations operating in the U.S., and internationally, including those organizations whose operations involve the distribution of wholesale and retail quantities of cocaine, methamphetamine, marijuana, heroin and their derivatives in and around the San Diego, California area. NTF Team 8 is also responsible for the interdiction of drugs and drug proceeds being trafficked through SDIA, as well as local bus and train stations.

9.    Based on my training and experience, I am also aware that drug traffickers use cell phones and other electronic devices in connection with their illicit activity. For example, drug traffickers use cell phones and other electronic devices to set up meetings with co-conspirators, to obtain supplies of drugs from suppliers, maintain records of illicit transactions, and to provide communication necessary for distribution quantities to sub-distributors and retail quantities to end-user customers. As examples, those devices can store locations including residences used as stash houses or homes of co-conspirators and the target of investigation, storage lockers where supplies and related illicit items (such as firearms and cash proceeds) are kept, banks and ATM machines where illicit money-movement activity can occur, and public parking lots where drug deals often happen.

10.     Through the course of my training, investigations, prior law enforcement experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for individuals involved in the manufacturing and distribution of controlled substances to work in concert with other individuals and to do so by utilizing cellular telephones and other portable communication devices to maintain communications with co-conspirators in order to further their illicit criminal activities. I am also aware that it is a common practice for individuals involved in the manufacturing and distribution of controlled substances to communicate with buyers regarding arrangements and payments utilizing cellular telephones. Based on my training and experience, I am aware that conspiracies involving the manufacture and distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements and payment, names, photographs, text messages, and phone numbers of co-conspirators.

11.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of drug trafficking and controlled substance manufacture and distribution investigations, and the opinions stated below are shared by them. Further, I have been personally involved in the investigation that is the subject of this Affidavit and I am familiar with the facts outlined below, or I have read the reports of investigation prepared by persons mentioned in this Affidavit. Among other things, my knowledge comes from my personal analysis of the reports submitted by other law-enforcement officers participating in this investigation.

12.     Based upon my training and experience as a DEA SA, my participation in the investigation of narcotic organizations, and consultations with law enforcement officers experienced with narcotic trafficking, controlled substance manufacture and distribution, and money laundering investigations, and all the facts and opinions set forth in this Affidavit, I submit the following:

a.     Narcotics traffickers will use cellular/mobile telephones because they are

1  mobile and they have instant access to telephone calls, text, web, and voice messages.

2        b.    Narcotics traffickers will use cellular/mobile telephones because they are

3  able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

4        c.    Narcotics traffickers and their accomplices will use cellular/mobile

5  telephones because they can easily arrange and/or determine what time their illegal cargo will

6  arrive at predetermined locations.

7        d.    Narcotics traffickers will use cellular/mobile telephones to direct drivers

8  to synchronize an exact drop off and/or pick up time of their illegal cargo.

9        e.    Narcotics traffickers will use cellular/mobile telephones to notify or warn

10 their accomplices of law enforcement activity to include the presence and posture of marked

11 and unmarked units, as well as the operational status of checkpoints and border crossings.

12        f.    Narcotics traffickers and their co-conspirators often use cellular/mobile

13 telephones to communicate with load drivers who transport their narcotics and/or narcotics

14 proceeds.

15        g.    The use of cellular/mobile telephones by conspirators or narcotics

16 traffickers tends to generate evidence that is stored on the cellular/mobile telephones,

17 including, but not limited to emails, text messages, photographs, audio files, videos, call logs,

18 address book entries, IP addresses, social network data, and location data.

19        13.    Subscriber Identity Module (SIM) Cards, also known as subscriber identity

20 modules, are smart cards that store data for cellular/mobile telephone subscribers. Such data

21 includes user identity, location and phone number, network authorization data, personal

22 security keys, contact lists and stored text messages. Much of the evidence generated by a

23 trafficker's use of a cellular/mobile telephone would likely be stored on any SIM Card that

24 has been utilized in connection with that telephone.

25        14.    Based upon my training and experience, and consultations with law

26 enforcement officers experienced in narcotics investigations, and all the facts and opinions

27 set forth in this affidavit, I have learned know that cellular/mobile telephones can and often

28 do contain electronic records, phone logs and contacts, voice and text communications, and

6

data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience, I have learned that searches of cellular/mobile telephones associated with narcotics investigations yield evidence:

   a.  tending to identify attempts to possess cocaine or other federally controlled substances with the intent to distribute them within the United States;

   b.  tending to identify other accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the possession of methamphetamine or other federally controlled substances with the intent to distribute them within the United States;

   c.  tending to identify co-conspirators, criminal associates, or others involved in the possession of cocaine or other federally controlled substances with the intent to distribute them within the United States;

   d.  tending to identify travel to or presence at locations involved in the possession of cocaine or other federally controlled substances with the intent to distribute them within the United States, including stash houses, load houses, and/or delivery points;

   e.  tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

   f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**III**

**<u>STATEMENT OF PROBABLE CAUSE</u>**

  15. This affidavit supports applications for search warrants authorizing the search of the **Target Devices**, utilized Gabriel ROMERO.

  16. Based on the information below, I have probable cause to believe that the

7

requested information will lead to evidence of:

      a. Evidence of a crime,

      b. Contraband, fruits of a crime, or other items illegally possessed, and

      c. Property designed for use, intended for use, or used in committing a crime

specifically, violations of Title 21, United States Code, Section 841, as well as to the identification of additional individuals who are engaged in the commission of these offenses.

**III.**

**<u>PROBABLE CAUSE</u>**

**A.**    **<u>Introduction and Investigative Background</u>**

     17.    On January 20, 2023, at approximately 9:36 p.m., Transportation Security Administration (TSA) employees, who were routinely X-raying checked luggage as part of their security screening process at the San Diego International Airport (SDIA), identified an inconsistency in a suitcase, subsequently identified as belonging to Gabriel ROMERO. The suitcase was identified by the United Airlines issued luggage tag, which had been placed on the suitcase when ROMERO checked the suitcase.

     18.    Responding to the inconsistency discovered during the screening process, TSA Officers opened the suitcase and discovered multiple packages of what they recognized as being suspected narcotics. TSA Officers then contacted San Diego Harbor Police (HP) and requested officers respond to the scene. When HP Officers arrived at the screening area they observed a large roller suitcase in an open position and situated on a table. During that time, HP Officers observed multiple brick shaped packages, wrapped in cellophane, in the suitcase. At that time, HP Officers contacted me, who along with Group Supervisor (GS) Sergeant (Sgt.) Oscar Amado, responded to the SDIA in order to conduct a follow-up narcotic investigation.

8

19.     Based on the presence of the suspected drug contraband, at approximately 10:21 p.m., HP Officers contacted ROMERO, who had already boarded his United Airlines flight, destined to O'Hare International Airport in Chicago, Illinois, and removed him from the aircraft. ROMERO was then transported to the HP office and detained pending further investigation of his suitcase. At the time of his detention, HP Officers found ROMERO to be in possession of **an Apple iPhone (Target Device 1), a Samsung S8+ cellular telephone with an IMEI number of 355980081726931 ("Target Device 2"),** and approximately $396.00 USD, as well as a black, carry on backpack.

20.     At approximately 10:45 p.m., DEA NTF Team 8 GS Sgt. Amado and I arrived at SDIA. Upon our arrival, GS Sgt. Amado and I observed the aforementioned suitcase, which I noted contained multiple brick shaped packages wrapped in green cellophane. Through my training and experience, I immediately recognized the packages as the same shape, size, and consisting of packaging materials commonly used in the smuggling of illegal narcotics. I also observed there were eight sealed packages inside the suitcase which appeared to have been concealed within a blue, lead lined X-ray blanket and under miscellaneous personal items and clothing. I inspected the packages and determined all eight sealed packages contained a compressed white powdery substance consistent with that of cocaine.

21.     As a result, I seized the suspected cocaine and transported it to the NTF Team 8 SDIA office. Once there, I performed a field test of the white powdery substance, which presumptively tested positive for the presence of cocaine, and was found to have a near net weight of approximately 12.1 kilograms (26.6 pounds).

22.     Subsequent checks of law enforcement databases revealed that ROMERO is currently on federal supervised release, stemming from his conviction for felony violation of Title 21, U.S.C., Section 952 and 960 – Importation of Cocaine on August 28, 2018, in U.S. District Court for the Southern District of California case number 18-CR-1987-H. In that case, ROMERO was sentenced on November 26, 2018

to 37 months confinement in federal prison, to be followed by 36 months on federal supervised release.

23.    On January 21, 2023, at approximately 12:50 a.m., GS Sgt. Amado and I arrived at the HP Office and conducted a recorded, post-*Miranda* interview of ROMERO, who waived his rights to counsel and agreed to answer some questions. During that time, ROMERO admitted he had full knowledge he was transporting cocaine and alleged he was working to pay off a debt from a previous load of approximately 300 pounds of cocaine that was seized.

24.    In addition, ROMERO also admitted he had traveled from California to Ohio and back, prior to his arrest on January 20, 2023, in order to conduct a practice run to see if he would be flagged for being on probation.

25.    As a result of the seizure of suspected cocaine and subsequent investigation, ROMERO was placed under arrest and transported to the San Diego County Jail.

26.    Finally, I have learned that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event. My training and experience leads me to believe drug dealers use and rely upon cellular telephones/devices to converse, via both standard voice and by text message, in coordinating their drug related business and in the consummation of larger, more complex drug transactions where multiple criminal parties are or may be involved. I believe the series of events surrounding ROMERO's arrest and the seizure of narcotics described above are no exception. Accordingly, I believe that the **Target Devices** found in ROMERO's possession, will provide additional evidence into the suspected drug trafficking activities of ROMERO and his specific involvement in the above-described instant offenses. Given this, I request permission to search the **Target Devices** for items listed in Attachment B beginning on December 20, 2022, up to and including January 20, 2023.

# IV

# METHODOLOGY

27.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28.    Following the issuance of these warrants, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and their memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of the warrants.

29.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or even months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**V**

**CONCLUSION**

30.     Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendant used the **Target Devices** to facilitate violations of Title 21, United States Code, Section(s) 841.

31.     Because the **Target Devices** were promptly seized during the investigation of Defendant's distribution activities and has since been securely stored, there is probable cause to believe that evidence of illegal activities committed by Defendant continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from December 20, 2022 through January 20, 2023.

32.     WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachment B, using the methodology described above.

1
2       I declare under penalty of perjury that the foregoing is true and correct.
3
4
5
6                                    George Vernia - Affiant
7                                    Special Agent
8                                    Drug Enforcement Administration
9
10  Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
11  by telephone on this ___ day of January, 2023.
12
13
14  HON. ANDREW G. SCHOPLER
    United States Magistrate Judge
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                    13